Dear Department of Transportation McCaleb,
¶ 0 This office has received your request for an Opinion asking, in effect, the following question:
Is compliance with the terms of 27 O.S. 13 (1991) whichprescribes the general policies for the acquisition of realproperty by condemnation a prerequisite to a valid condemnationby the Oklahoma Turnpike Authority which is authorized to acquireproperty by condemnation pursuant to 69 O.S. 1707 and 69O.S. 1708 (1991)?
¶ 1 The Oklahoma Turnpike Authority (OTA) is an agency of the State of Oklahoma created and operated under Sections 1701 to 1735, inclusive of Title 69 O.S. 11-1401 to 69 O.S. 11-1405
(1991-1998), inclusive, of Title 47 O.S. 1991. The Authority, pursuant to Sections 1707 and 1708 of Title 69, has the authority to acquire by purchase or condemnation lands or such interests therein as in its discretion may be necessary for its purposes. Section 1721 of Title 69 provides:
 This article shall be deemed to provide an additional and alternative method for the doing of the things authorized thereby, and shall be regarded as supplemental and additional to powers conferred by other laws, and shall not be regarded as in derogation of any powers now existing[.]
¶ 2 In Oklahoma Turnpike Authority v. New, 853 P.2d 765, 766
(Okla. 1993), it was held that Section 69 O.S. 1708 is not an exclusive provision for awarding costs and fees against OTA, and other statutory provisions regarding condemnation proceedings are applicable to the OTA. One such provision is 27 O.S. 13 (1991) which provides in pertinent part:
 Any person, acquiring agency or other entity acquiring real property for any public project or program described in Section 9 of this title shall comply with the following policies:
 1. Every reasonable effort shall be made to acquire, expeditiously, real property by negotiation.
 2. Real property shall be appraised before the initiation of negotiations, and the owner or his designated representative shall be given an opportunity to accompany the appraiser during his inspection of the property, except that the head or governing body of the entity acquiring real property, if so mandated by federal law or regulation, may prescribe a procedure to waive the appraisal in cases involving the acquisition by sale or donation of property with a low fair market value as such value is defined by federal law or regulation.
 3. Before the initiation of negotiations for real property, an amount shall be established which is reasonably believed to be just compensation therefor and such amount shall be promptly offered for the property. In no event shall such amount be less than the approved appraisal of the fair market value of such real property. Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the public improvement for which such property is acquired, or by the likelihood that the property would be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, will be disregarded in determining the compensation for the property. The owner of the real property to be acquired shall be provided with a written statement of, and summary of the basis for, the amount established as just compensation. Where appropriate, the just compensation for the real property acquired and for damages to remaining real property shall be separately stated.
 4. No owner shall be required to surrender possession of real property before the agreed purchase price is paid or deposited with the state court, in accordance with applicable law, for the benefit of the owner of an amount not less than the approved appraisal of the fair market value of such property, or the amount of the award of compensation in the condemnation proceeding of such property.
 5. The construction or development of a public improvement shall be so scheduled that, to the greatest extent practicable, no person lawfully occupying real property shall be required to move from a dwelling, assuming a replacement dwelling, as required by the Oklahoma Relocation Assistance Act, will be available, or to move his business or farm operation without at least ninety (90) days' written notice from the date by which such move is required.
 6. If any owner or tenant is permitted to occupy the real property acquired on a rental basis for a short term or for a period subject to termination on short notice, the amount of rent required shall not exceed the fair rental value of the property to a short-term occupier.
 7. In no event shall the time of condemnation be advanced, on negotiations or condemnation and the deposit of funds in court for the use of the owner be deferred, or any other coercive action be taken to compel an agreement on the price to be paid for the property.
 8. If an interest in real property is to be acquired by exercise of power of eminent domain, formal condemnation proceedings shall be instituted. The acquiring authority shall not intentionally make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property.
 9. If the acquisition of only part of the property would leave its owner with an uneconomic remnant, an offer to acquire that remnant shall be made. For the purposes of this section, an uneconomic remnant is a parcel of real property in which the owner is left with an interest after the partial acquisition of the property of the owner which has little or no value or utility to the owner.
 10. A person whose real property is being acquired in accordance with this title may, after the person has been fully informed of his right to receive just compensation for such property, donate such property, any part thereof, any interest therein, or any compensation paid therefor, as such person shall determine.
11. As used in this section:
 a. "Appraisal" means a written statement independently and impartially prepared by a qualified appraiser setting forth an opinion of defined value of an adequately described property as of a specific date, supported by the presentation and analysis of relevant market information; and
b. "Acquiring agency" means:
 (1) a state agency which has the authority to acquire property by eminent domain pursuant to state law, and
 (2) a state agency or person which does not have such authority, to the extent provided by regulation.
¶ 3 You have asked this office to determine to what extent the policies contained in Section 13 of 27 O.S. 13 (1991) are applicable to the Oklahoma Turnpike Authority. In 1986 the Oklahoma Court of Appeals addressed the applicability of Section 13. See Western Farmers Electric Cooperative v. Willard,726 P.2d 361 (Okla.Ct.App. 1986). Western Farmers involved a condemnation brought by an electric cooperative to construct power lines. The cooperative was authorized to exercise eminent domain pursuant to 18 O.S. 437.2(o) (1981). After negotiations broke down the cooperative filed a district court condemnation action. In their answer, the landowners alleged that the cooperative did not make a diligent effort to purchase an easement and that it did not comply with the requirements of 27O.S. 13 (1991). The landowners filed exceptions to the commissioner's report setting damages at $5,250.00 and, among other things, arguing that compliance with 27 O.S. 13 (1981) was a condition precedent to the exercise of the right of eminent domain. The landowners' exceptions were denied by the trial court. Landowners (Appellants) asserted on appeal that because the electric cooperative received federal funds[1] it was required to comply with Section 13. The Court of Appeals, however, found Section 13 to be merely a statement of policy and not binding. The following quote is found at page 363:
 On appeal Landowners attempt to convince us that because Appellee receives federal funds it is required, as a condition precedent to exercising its rights of eminent domain, to comply with 27 O.S. 13
(1981). Much of Landowners' testimony at the hearing addressed this issue. However, Landowners seem to be unaware that this statute is a statement of policy only. 27 O.S. 15 specifically provides as such. This section states:
 "The provisions of (13) create no right or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation."
 Consequently the trial court was correct in denying Landowners' objections based on Appellee's alleged failure to comply with Section 13.
Western Farmers, 726 P.2d at 363 (emphasis added).
¶ 4 Section 27 O.S. 15 of Title 27, stating that Section 13 creates no rights or liabilities, has not been amended since the Court of Appeals' decision in Western Farmers. Compliance is therefore not a prerequisite to a condemnation. The provisions of27 O.S. 13 (1991) are only statements of policy which do not create rights or liabilities. Therefore, as a statement of policy, the Oklahoma Turnpike Authority is not required to follow the provisions of 27 O.S. 13 (1991) as a condition precedent to condemnation.
¶ 5 Therefore, it is the Official Opinion of the AttorneyGeneral that:
 As provided in 27 O.S. 15 (1991), the terms of 27 O.S.13 (1991) prescribing the general policies for the acquisitionof real property by condemnation create no rights or liabilities,and, therefore, compliance with the policies found in Section 13is not a condition precedent to a valid condemnation by theOklahoma Turnpike Authority.
 To the extent A.G. Opin. 71-425 is inconsistent with thisOpinion, A.G. Opin. 71-425 is withdrawn.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DOUGLAS F. PRICE ASSISTANT ATTORNEY GENERAL
[1] Title 27 O.S. 9 (1991) provides: "The provisions of this act shall be applicable to the acquisition of real property under the laws of this state for public use in any project or program in which federal, state or local funds are used." In 1971 the Office of Attorney General issued A.G.Opin. 71-425 which opined that the provisions of 27 O.S. 9-15 (1971) were applicable to land acquired by the Oklahoma Turnpike Authority. That Opinion predated Western Farmers.